Garner v. Hudgins et al.

HENRY C. GARNER, Appellant, *v.* WILLIAM HUDGINS *et al.,*
Respondents.

1. *Statute of frauds—Promise to indemnify one not a creditor—Effect of, under
the statute, when not in writing.*— A. & B. composed a firm. B. gave his
individual note for a certain sum, and C., being induced by the assurances
of the firm that the money to be raised on the note was for their benefit, and
that they would pay it, signed the same as surety. B. turning out insolvent,
C. was compelled to pay the note, and brought suit against A., the remain-
ing partner, for the amount. *Held:*

    1. That the engagement of the firm was, in effect, a promise to indemnify C.

    2. That being a promise to indemnify, it was not void under the statute of
frauds, as made to C., who was not a creditor.

    3. That the firm being liable for the note to B., the engagement of the firm
was a promise to indemnify C. for an obligation which was their own, and
hence was not void under the statute as not being in writing.

*Appeal from Fifth District Court.*

*Hall & Oliver*, for appellant.

*Vories & Vories*, for respondents.

BLISS, Judge, delivered the opinion of the court.

The petition recites that James T. Hudgins was director of the
Farmers' Bank of Missouri, and that on the 28th of January,
1858, the firm of Wm. Hudgins & Co., composed of defendants
and said James T. Hudgins, desired to procure a loan of $3,700;
and for reasons set forth, the said firm, by the name of and
through the position of said James T., procured said loan and
used it in the firm business, the said James T. executing his note
at six months, with sureties for said sum; and it being understood
when said note was executed that its proceeds were for the use of
the firm, and that the firm was to be liable for its payment. The
note was renewed from time to time until its last renewal, on the
25th of December, 1862, with the same understanding and agree-
ment, the said firm paying the interest at each renewal. The
petition charges that at said date, defendant Bayliss, then trans-
acting the business of the firm, acknowledged that said debt was
obligatory upon the firm, and promised that the firm should pay

it, and that the plaintiff became surety, rpon said last renewal at the special instance and request of said firm, and specially that said Bayliss, acting for the firm, represented to and promised the plaintiff, at the time of said last renewal, that it was made to give said firm of Wm. Hudgins & Co. longer time to pay the debt; that the note was given for their benefit, and that they would pay it; and that the plaintiff, relying upon and induced by such representations and assurances, signed said note as surety. The petition further shows that the note was protested for non-payment; that the said firm of Wm. Hudgins & Co. failed to pay the same and protect the plaintiff as their surety; that the said James T. Hudgins is dead, and his estate is insolvent and wholly unable to pay the same; and that the plaintiff, on the 20th of November, 1867, as such surety, paid upon the note the sum of $600, which he seeks to recover back in this action. To this petition a demurrer was filed, which was sustained by the Circuit and District Courts.

This court has already decided, in Farmers' Bank of Missouri v. Bayliss *et al.*, 35 Mo. 428, and 41 Mo. 274, that this firm of Wm. Hudgins & Co. is not liable to the said bank either upon this note or for the money advanced upon it; and defendants now insist that if not so liable to the bank that discounted the note, they can not be held by a surety who has been compelled to pay it.

In the cases referred to, the court decided that there was no privity of contract between the bank and the said firm; that in discounting the note no credit was given to the firm, but only to the parties to the note; and that the fact that the money was borrowed upon the credit of the note, for the use of the firm, only created a creditor and debtor relation between the maker of the note and the firm. Certain remarks of the judge who delivered the opinion in the last case seem to have been relied upon by the courts below in sustaining the demurrer. The judge says, on page 288: "If the indorsers on the note are obliged to pay it, they have their recourse upon the maker, for whom they are sureties, and he may have his account against his firm, to whose use he has applied the money." This is undoubtedly true; but

it is not necessarily true that the indorsers' sureties have no other remedy against the insolvent maker.

In Higgins v. Dellinger, 22 Mo. 397, where one borrowed money to remit to his brother, and gave a bond with the plaintiff as surety, who afterward paid the bond, the court, without any direct evidence of the fact, but in furtherance of justice, held the person who borrowed the money to have been the agent of the one to whom it was remitted, and hence that the latter was holden to the surety; but Judge Leonard, in giving the opinion, remarked: "If, however, S. D. borrowed the money for himself, either to pay a debt he owed his brother or to make a loan to him, then F. (the brother) was not liable to the plaintiff, but to his brother's estate." This case, then, to which we are referred by the present plaintiff, is not in point; for, as we have seen, this court has twice decided that the note in question was not the note of Wm. Hudgins & Co., but of James T. Hudgins, which is inconsistent with the idea that he executed it as their agent. Hence, if they are holden at all, it must be upon some other principle.

The engagement of defendants set out in the petition, so far as the plaintiff is concerned, has the effect of and is in the nature of a promise to indemnify; and defendants deny their obligation because it was made without consideration and was not in writing. Its consideration is apparent, when we consider that the plaintiff was induced by it to become a party to the note; but the facts that the note was a debt of James Hudgins, and the promise was not in writing, would seem, at first sight, to bring it within the statute of frauds.

It has been sometimes held that a promise to indemnify did not come within the statute, but it seems to be now settled by the better authorities that where the promise is collateral merely, the promisor having no interest in the liability guaranteed against, and being under no obligations to pay it, it is not obligatory unless in writing. (See Brown on Frauds, §§ 168–71, and cases cited.) But the promise to indemnify is only embraced by the statute when it is to pay the debt of another, and hence an indemnity against one's own obligation or liability does not come within it. (See cases cited in note to § 188, Brown on Frauds.)

The remark of this court in Howard v. Coshow, 33 Mo. 118, that the statute applies only to promises made to the creditor, is, in general, correct, but can not apply to promises of indemnity.

Unless, then, in the case at bar, the defendants were under some obligation in regard to the subject-matter of this note, the agreement to pay it as an inducement to the action of the plaintiff in signing it, can not be enforced as an indemnity. It is unnecessary to consider what precisely in all cases that obligation should be, but I have no hesitation in holding that in the present case the obligation of the defendants was sufficient to hold them to their undertaking.

This court has not decided, as seems to be assumed, that the defendants are not liable for this debt, but only that they were not parties to the note and are not liable to the bank. Their liability to James T. Hudgins, who obtained the money for them, is expressly recognized in the cases cited. It was his duty to pay the note, and it was the duty of the firm to pay him. The obligation upon the defendants was the same, and it did not matter to them whether they paid it to one or the other. The bank might not be able to compel them to pay it, because there was no contract between them; but James Hudgins could; and being so obligated, and in order to extend their credit, they induced the plaintiff to become surety upon the last renewal, by admitting that the money was obtained for their use, that they were bound to pay the note, and by agreeing to pay it at maturity. They thereby substantially undertook to indemnify for a liability for their own debt as well as that of the maker of the note. Most of the cases reported involving the application of the statute are where the promise is direct to pay the debt of another, and that promise is sought to be enforced by the creditor. In those cases the rule has generally been that if the engagement be only collateral to the original undertaking, the promisor becoming but a surety to the principal debtor, it comes within the statute and must be in writing. But even then, if the promise be to pay a debt which the promisor is already under obligation to discharge, or when the promise is in effect to pay his own debt, although that of a third person be incidentally

Garner v. Hudgins et al.

guaranteed, it does not come within the statute (Johnson v. Gilbert, 4 Hill, 178; Brown v. Curtis, 2 N. Y. 225); and upon this principle the assignor of a promissory note is held by his guaranty, though not complying with the forms of the statute, because, upon assigning the note for value, he becomes a conditional debtor to the assignee, and thus guarantees his own debt. And the principle is carried still further. After commenting upon a number of decisions, the Supreme Court of Massachusetts, in Nelson v. Boynton, 3 Metc. 402, states it thus broadly, and says that " cases are not considered as coming within the statute when the party promising has for his object a benefit he did not before enjoy, accruing immediately to himself; but when the object of the promise is to obtain a release of the person or property of the debtor, or other forbearance or benefit to him, it is within the statute."

The principle thus recognized should apply with more force to cases of indemnity, which usually are not, even in form, promises to pay the debt of another, but to save harmless the promisee. Thus, in Harrison v. Sawtell, 10 Johns. 242, the defendant being bound to protect a third person, obtained special bail for him, and verbally promised to indemnify the person becoming bail. The court held that the statute of frauds had nothing to do with it, for the reason that the plaintiff had become bail for a third person whom the defendant was bound to protect and save harmless in the suit.

Defendants' counsel seem to assume in argument that the money thus borrowed by James T. Hudgins for the use of the firm was to furnish his share of the capital of the firm, or to pay some debt due them. But this idea is negatived by the averments of the petition. The defendants acknowledged the indebtedness to be theirs, and agreed to pay it; and that agreement being made with the plaintiff, who is not a partner, as an inducement to his action, becomes, so far as he suffers by that action, a debt of the firm.

The judgment of the District and Circuit Courts are reversed and the cause remanded. The other judges concur.