ALBERT B. GIBBS, Appellant, *v.* JOHN W. BATES and STEPHEN
HOWARD, Respondents.

A and B being copartners, A upon his individual credit obtains a loan from
C of $1,200, which is used in the partnership business, but is credited to
A personally on the partnership books, and so remains with A's know-
ledge and without any dissent on his part for five years; at the end of
that time, A and B enter into an agreement for the settlement of the
partnership affairs, by which B, among other things, agrees in one year
to satisfy and discharge all the liabilities of the firm.—*Held*, that the loan
of $1,200 was personal to A, and that B was not obliged under his agree-
ment to pay the amount to C, A's claims against the firm having been
expressly excepted from it.

(Submitted December 7th, and decided December 13th, 1870.)

APPEAL from the judgment of the General Term, in the
third judicial district, affirming a judgment entered on the
report of E. Cowen, referee.

Bates, Gibbs and Kimball in the years 1856 and 1857 were
partners in the commission and produce business at Troy, N.
Y., in connection with the firm of Livermore & Griffin, of
the city of New York.

In June, 1857, Gibbs went to Chicago to trade for the
firm in live stock, and while there, he borrowed of one Clark
Perry $1,200, which was used in the partnership business,
and of which his copartners were immediately advised, and
he (Gibbs) received a personal credit on the partnership books
for that amount. Gibbs subsequently knew of such credit
having been given him, and allowed it to remain unchanged
on the books.

On the 25th of August, 1862, an agreement was entered
into for the settlement of the partnership affairs, by which
Bates, among other things, agreed within one year from its
date to satisfy and discharge by compromise or otherwise all
of the liabilities of each of the two firms before mentioned,
and in consideration of Bates so doing, Gibbs agreed to
deliver and surrender to Bates a draft for $500, which had
been drawn on him by the defendant (Howard) and which

Bates had accepted, and which draft was then held by said Gibbs.

Bates settled all the liabilities of the two firms, but did not pay the $1,200 loan before mentioned, claiming that it was not included in the agreement.

This suit was brought upon the said draft for $500, the defendant relying upon the agreement and alleging performance of it, and the plaintiff asserting non-fulfillment by Bates, and claiming that the claim of Perry for the $1,200 was a firm debt.

This action was referred to E. Cowen, referee, and on the coming in of the referee's report, judgment was entered dismissing the complaint with costs; from which judgment an appeal was taken to the General Term, where judgment of affirmance was rendered, from which last mentioned judgment an appeal was taken to this court.

*W. A. Beach,* for the appellant.

*John B. Gale,* for the respondent.

RAPALLO, J. The only question in this case is, whether the agreement of Bates, dated August 25th, 1862, to discharge the liabilities of the firm of Bates, Griffin & Co. bound him to pay the $1,200, which Gibbs had borrowed from Clark Perry in Chicago, in July, 1857.

The referee has found that this money was obtained from Perry by Gibbs. That Perry intended to deal, and supposed he was dealing with Gibbs individually, and not with the firm, and never made any claim against the firm. That the money was in fact obtained by Gibbs for the benefit of the firm, and was employed in their business. That it was included in a cash payment of $1,518.02 made by Gibbs at Chicago for account of the firm, but that immediately after the payment, Gibbs rendered to the firm a statement, from which it appeared that the payment had been paid by him, and it did not appear that he had borrowed the money, and he

was thereupon credited on the firm books with the whole amount of $1,518.02. That he knew of this credit, and it remained on the books from 1857, and stood there in 1862, when the agreement in question was made. That no credit had been given on the books to Perry, and that Gibbs, though he knew that he was personally credited with the money, never made any objection to the credit or requested any correction of it.

This money having been loaned to Gibbs on his individual responsibility and applied to the use of the firm, he was clearly entitled to the credit which was given to him on the books. On a settlement of the partnership accounts of the firm, it would have constituted an indisputable claim in his favor against the firm.

By the terms of the agreement of July 25th, 1862, all claims of Gibbs against the firm were expressly excepted from the undertaking of Bates to discharge the liabilities of the firm. When that agreement was made, this indebtedness had for years been treated on the partnership books, with the knowledge of Gibbs, as a debt due to him, and not to Perry.

It is fairly to be presumed that the agreement of July, 1862, was made with reference to this state of facts. That this indebtedness was understood as being embraced in the exception; that the amount to be paid by Gibbs to Bates was fixed with reference to the state of Gibbs' account with the firm, and that, if $1,200 of Gibbs' credits had stood on the books to the credit of Perry, instead of Gibbs, a corresponding increase would have been required in the amount stipulated by the agreement as payable by Gibbs to Bates for his undertaking to discharge the firm debts. There was no error, therefore, in the conclusion of the referee, that the debt to Perry was not a liability of the firm within the meaning of the contract of August 25th, 1862.

Any presumption which might arise from the facts stated in the additional finding as to the memorandum furnished by Gibbs to Kimball, in August, 1857, is rebutted by the finding

that Gibbs never objected to the credit being given to him or requested its correction.

The judgment should be affirmed with costs.

All the judges concurring, judgment affirmed.